Morgan E. Pietz (Cal. Bar No. 260629)*
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Telephone: (310) 424-5557
Facsimile : (310) 546-5301

* *Pro Hac Vice Application Pending*

Peter C. Dee
Mavronicolas Mueller & Dee LLP
950 Third Avenue, 10th Floor
New York, NY 10022
pdee@mavrolaw.com
Telephone: (646) 770-1256
Fax: (866) 774-9005

*Attorneys for Putative John Doe in 2:12-cv-07789*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIBU MEDIA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1-18, <br><br> Defendant. | Case No. 2:12-cv-07789-KM-MCA <br><br> Case Assigned to: <br> District Judge Kevin McNulty <br><br> Discovery Referred to: <br> Magistrate Judge Madeline C. Arleo <br><br> **MEMORANDUM IN SUPPORT OF PUTATIVE JOHN DOE'S MOTION: (1) TO SEVER AND DISMISS ALL JOHN DOES OTHER THAN JOHN DOE NUMBER ONE, AND (2) QUASH ALL OUTSTANDING SUBPOENAS** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ 2

TABLE OF AUTHORITIES ........................................................................ 4

I. INTRODUCTION AND SUMMARY .......................................................... 7

II. FACTUAL AND PROCEDURAL BACKGROUND ...................................... 9

    (a) Factual Background on Malibu Media's "Settlement" Business ........................ 9

    (b) Procedural History of Instant Actions .............................................. 14

III. THE COURT SHOULD SEVER AND DISMISS WITHOUT PREJUDICE ALL
JOHN DOES OTHER THAN JOHN DOE NUMBER ONE ............................................ 15

    (a) Legal Standard ................................................................... 15

    (b) Joinder is Not Permissible ...................................................... 15

        (1) This Court Should Adopt the Ninth Circuit Court of Appeals' Rule That
        Only a "Very Definite Logical Relationship" Can Support Joinder, and
        Sever the Does ..................................................................... 15

        (2) Courts of This District Now Deny "Swarm Joinder" ............................... 18

        (3) John Does Using BitTorrent to Download Different Movies Months
        Apart from One Another Are Not Part of the Same Swarm and Not Part
        of Same Transaction or Occurrence ............................................... 19

    (c) Discretionary Severance is Also In Order ......................................... 20

        (1) Judge Whittemore of Florida and Judge Young of Massachusetts Both
        Found Joinder Technically Proper But Nevertheless Severed the Does on
        a Discretionary Basis For Highly Compelling Reasons ............................. 21

        (2) The Different Factual and Legal Circumstances Applicable to Each
        Doe—*e.g.*, Was the WiFi Network Encrypted and Who Had Access to
        It?—Will Differ Greatly, Which Weighs Heavily in Favor of
        Discretionary Severance ........................................................... 22

        (3) If Malibu Media Wishes to Use the Court's Subpoena Power as Part of a
        National Copyright Infringement "Settlement" Business, it Should Factor
        the ***Full*** Payment of Statutorily Required Filing Fees into the Business
        Model .............................................................................. 23

        (4) Severing the Does Would be Without Prejudice to *Consolidation* of the
        Severed Cases for Certain Purposes, Which Would Alleviate Any
        Administrative Difficulties Posed by Severance ................................... 25

        (5) Malibu Media's Demonstrated "Abusive Litigation Tactics," and the
        High Risk of Unjust "Settlements" Also Militate in Favor of
        Discretionary Severance ........................................................... 25

(6) Despite Precedents Indicating a General Preference for Joinder, In this Kind of Case, the Underlying Interests of Fairness and Judicial Economy Are Better Served by Severance ...............................................................26

IV. THE COURT SHOULD QUASH ALL THE SUBPOENAS,  EVEN FOR JOHN DOE NUMBER ONE.................................................................................................................28

(a) Legal Standard ...................................................................................29

(1) The *Sony Music* and *Semitool* Factors ...................................................29

(2) *Gillespie* asks Whether the Subpoenas are "Very Likely" to Result in Service of Process.................................................................................31

(3) The Inquiry Is Not Limited to the Terms of Rule 45 ..............................32

(b) The Subpoenas, *By Themselves*, Are Not "Very Likely" or even "Reasonably Likely" to Result in the Identification of and Service Upon an Actual Defendant; Where is the Rest of the Discovery Plan?........................................33

(c) The Complaint Cannot Withstand a Hypothetical Motion to Dismiss ..............36

V. CONCLUSION...........................................................................................37

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acevedo v. Allsup's Convenience Stores, Inc.*
  600 F.3d 516, 521-522 (5th Cir. 2010) ................................................................16

*AF Holdings LLC v. Does 1-1,058*, D.D.C. Case No. 12-cv-0048 Dkt. 46, 8/6/12
  (Howell, J.) ..........................................................................................................9

*AF Holdings, LLC v. John Doe*, C.D. Cal. Case No. 2:12-cv-5712-ODW-(JCx) ECF
  No. 9, 10/19/12 ....................................................................................................35

*Amselfilm Productions GMBH & CO. KG v. SWARM 6A6DC*, Civ. No. 12-3865-
  FSH-PS, dkt. no. 12 (D.N.J. Oct. 10, 2012) (Hochberg, J.) ...................................8

*Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000) .................17

*Call of the Wild Movie, LLC v. Does 1-1,062*,
  770 F. Supp. 2d 332 (D.D.C. 2011) ...................................................................9,33

*CP Prods., Inc. v. Does 1-300*, N.D. Ill. No. 10-cv-6255, ECF No. 32, 2/24/11 .......9

*DigiProtect USA Corp. v. Doe*
  2011 U.S. Dist. LEXIS 109464, 8-9 (S.D.N.Y. Sept. 26, 2011) ...........................21

*Discount Video Center, Inc. v. Does 1-29*
  D. Mass. Case No. 12-cv-10805, Dkt. No. 40, 8/24/12, p. 3 ................................12

*Hard Drive Prods. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. 2011)..........9, 22

*Hubbard v. Hougland*, 2010 U.S. Dist. LEXIS 46184 (E.D. Cal. Apr. 5, 2010)
  (emphasis added)..................................................................................................16

*In re: BitTorrent Adult Film Copyright Infringement Cases,* E.D.N.Y. Case No. CV-
  11-3995-DRH-GRB, Dkt. No. 39, 5/1/2012 ................................................. passim

*In re: BitTorrent Adult Film Copyright Infringement Cases,* E.D.N.Y. Case No. 12-
  cv-1147-JS-GRB, ECF No. 9, 7/31/12 (*In re: Adult Film Cases II*). ...................27

*In re: Cox Comm'n., Inc. et al.,* D.C. Cir. Case No. 12-8011 (December 7, 2012) ....9

*Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 28,
12/20/12 (Order Vacating Subpoenas)....................................................9

*Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 48,
2/7/13, (OSC re: Sanctions) ...............................................................12

*K-Beech, Inc. v. John Does 1-47*, N.D. Ga. No. 11-cv-2968....................................29

*Liberty Media Holdings, LLC*
2011 WL 5190106, at *3 (S.D. Fla. Nov. 1, 2011)................................................23

*Liberty Media Holdings, LLC v. BitTorrent Swarm*
2011 WL 5190048, at *2–4 (S.D. Fla. Nov. 1 2011)............................................21

*Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW,
docket no. 7, 6/27/12 .....................................................................14

*Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 2:12-cv-3614-RGK-SS,
ECF No. 35, 10/10/12 ("*Malibu Media II*")………………………………...passim

*Malibu Media, LLC v. John Does # 1-39,* D. N.J. No. 3:12-cv-6945-MAS-DEA,
ECF No. 23, 3/28/13 (Arpert, J.)..........................................................8

*Malibu Media, LLC v. John Does 1-11*
2012 U.S. Dist. LEXIS 94648 (D.D.C. April 11, 2012) .......................................11

*Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. April
11, 2012) ................................................................................11

*Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No.
22, 12/6/12...............................................................................22

*Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No.
22, 12/6/12 (Whittemore, J.) .............................................................8

*Next Phase Distribution, Inc. v. John Does 1-27*
___ F.R.D. ___, 2012 WL 3117182, at *4-5 (S.D.N.Y. July 31, 2012) ...............22

*Patrick Collins, Inc. v. John Does 1 through 9*, S.D. Cal. Case No. 3-12-cv-1436,
ECF No. 23, 11/8/12, p. 6 (Huff, J.).......................................................8

*Patrick Collins v. John Does 1-10* C.D. Cal. Case No. 12-cv-5267, ECF No. 21,

11/5/12, p. 10 (Selna, J.) ..........................................................................8

*Patrick Collins, Inc. v. John Does 1-21*

2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012)..........................18

*Raw Films, Inc. v. Does 1-32*

2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) ..............................21

*SBO Pictures, Inc. v. Does 1-20*

No. 12 Civ. 3925(SAS), 2012 WL 2304253, at *2 (S.D.N.Y. June 18, 2012) ......22

*See AF Holdings LLC v. Does 1-1,058*, D.D.C. Case No. 12-cv-0048 Dkt. 46, 8/6/12

(Howell, J.)...............................................................................................9

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)..34

*Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, D. Mass. Case No. 12-

10761, ECF No. 31, 10/2/12 ............................................................8, 22

*Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 498 (D. Ariz. 2012)........24

*Third Degree Films, Inc. v. John Does 1-110*, Civ. No. 12-5817-WJM-MF, dkt. no.

7 (D.N.J. Jan. 17, 2013) (Falk, J.) ..........................................................8

**Statutes**

Fed. R. Civ. Proc. 20(a) ............................................................................15

**Other Authorities**

20 Berkeley Tech. L.J. 1685 (2005), Opderbeck, David W., "Peer-to-Peer Networks,

Technological Evolution, and Intellectual Property Reverse Private Attorney

General Litigation."..................................................................................27

*Patrick Collins v. John Does 1-10* C.D. Cal. Case No. 12-cv-5267-JVS, ECF No. 21,

11/5/12, p. 10..........................................................................................7

## I.  INTRODUCTION AND SUMMARY

Plaintiff relies on the controversial BitTorrent "swarm joinder" theory to justify paying only a single filing fee to sue 18 John Doe defendants for copyright infringement at the same time.  While courts are split on whether swarm joinder passes muster under Rule 20, an increasingly large majority of Courts are severing John Does at this stage of litigation, *both* because some Courts find swarm joinder is impermissible,[1] *and* as a matter of the Court's discretion.[2]

Simply put, there is no binding precedent on this Circuit compelling this Court to reach a conclusion one way or another on swarm joinder.[3]  Although there are

---

[1] *See, e.g., Malibu Media, LLC v. John Does # 1-39,* D. N.J. No. 3:12-cv-6945-MAS-DEA, ECF No. 23, 3/28/13 (Arpert, J.) (reconsidering prior decision to allow swarm joinder, severing and dismissing all Does other than Doe No. 1); *Amselfilm Productions GMBH & CO. KG v. SWARM 6A6DC*, Civ. No. 12-3865-FSH-PS, dkt. no. 12 (D.N.J. Oct. 10, 2012) (Hochberg, J.) (Order granting request to sever); *Patrick Collins v. John Does 1-41*, Civ. No. 12-3908-KSH-PS, dkt. no. 32 (D.N.J. Feb. 15, 2013); (Hayden, J.) (Opinion granting motion to sever and dismiss); *Third Degree Films, Inc. v. John Does 1-110*, Civ. No. 12-5817-WJM-MF, dkt. no. 7 (D.N.J. Jan. 17, 2013) (Falk, J.) (Order denying motion for expedited discovery without prejudice); *Patrick Collins, Inc. v. John Does 1 through 9*, S.D. Cal. Case No. 3-12-cv-1436, ECF No. 23, 11/8/12, p. 6 (Huff, J.) ("the majority view among district courts within the Ninth Circuit is that allegations of swarm joinder are alone insufficient for joinder". . . "Doe Defendants' alleged conduct therefore lacks the type of 'very definite logic relationship' required to permit joinder."); *Patrick Collins v. John Does 1-10* C.D. Cal. Case No. 12-cv-5267, ECF No. 21, 11/5/12, p. 10 (Selna, J.) (holding that on the Ninth Circuit there must be a "very definite logical relationship" to support joinder under Rule 20 so Doe defendants in BitTorrent case must be severed).

[2] *See, e.g., Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No. 22, 12/6/12 (Whittemore, J.); *Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, D. Mass. Case No. 12-10761, ECF No. 31, 10/2/12, 2012 WL 4498911 (Young, J.).

[3] The D.C. Circuit is the first Court of Appeals likely to reach the issue of "swarm joinder."  *See AF Holdings LLC v. Does 1-1,058*, D.D.C. Case No. 12-cv-0048 Dkt.

some cases finding swarm joinder appropriate at the outset of litigation, Movant believes it is fair to say that nationally, many more Courts have found for the Does than have found for the plaintiffs on swarm joinder. [4]  The Honorable Milton Shadur of the Northern District of Illinois was one of the first Judges to confront a case like this in *CP Prods., Inc. v. Does 1-300*, N.D. Ill. No. 10-cv-6255, ECF No. 32, 2/24/11 and he opined that "It would constitute a real stretch of the normal meaning of language for CP to call Rule 20(a)(2)(A) into play as the asserted predicate for lumping its separate asserted claims into a single lawsuit." *Id.* at fn 2.  Judge Shadur is absolutely correct, swarm joinder is a real stretch.  However, over the past three years or so, a few Courts have proven willing to entertain the swarm joinder theory. Movant respectfully argues that on both the law and the equities, severance is the right result.

Further, the subpoenas should *all* be quashed, even the subpoena seeking information for John Doe number one.  On this point, the Court is respectfully referred to an order issued by Judge Wright of the Central District of California. *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 28, 12/20/12 (order vacating subpoena in single Doe case, requiring plaintiff to explain how it would use ISP subscriber information prior to being allowed to issue a new subpoena; identical order entered in 45 related, single-Doe cases).  Before being given the keys to discovery, a plaintiff in this kind of case should be required to

---

46, 8/6/12 (Howell, J.) *permission to appeal granted sub nom. In re: Cox Comm'n., Inc. et al.,* D.C. Cir. Case No. 12-8011 (December 7, 2012).

[4] Although by no means a definitive measure, comparing the Lexis Shepard's reports for *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) (another lead case finding swarm joinder appropriate) with *Hard Drive Prods. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. 2011) (a lead case severing does) shows how the tide has turned.  As of January 3, 2013, *Call of the Wild* was "followed" 4 times in 2011 and 6 times in 2012.  By contrast, *Hard Drive Prod's.*, which found for the Does, was "followed" 11 times in 2011 and 26 times in 2012.

- 8 -

explain "how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information—given that the actual infringer may be a person entirely unrelated to the subscriber—while also considering how to minimize harassment and embarrassment of innocent citizens." *Id.*

## II.  FACTUAL AND PROCEDURAL BACKGROUND

**(a)     Factual Background on Malibu Media's "Settlement" Business**

Plaintiff is a pornographer that has recently gotten into a new line of business: coercing copyright infringement "settlements." In these lawsuits, Plaintiff alleges that unknown individuals used certain I.P. addresses to access the Internet, and then used an application called BitTorrent to illegally download Plaintiff's pornographic movies. After filing a complaint seeking statutory damages, Plaintiff generally seeks leave of court to conduct early discovery and issue subpoenas to Internet Service Providers demanding that the ISPs disclose the account details of the I.P. addresses used to download plaintiff's movies.  In order to obtain Court authorization to issue subpoenas—the single key legal issue driving Plaintiff's business model—Plaintiff avers that it needs to issue the subpoena in order to identify the defendant and effect service of process.

However, really, this is all a sham.  Plaintiff pretends it is interested in "identifying" and "serving" actual defendants.  But that is simply not true.  As has been shown district by district, in hundreds of cases, what plaintiff is really interested in is using this Court's subpoena power, and the stigma associated with pornography, to leverage improper "settlements" from Internet subscribers who may ***or may not*** have actually downloaded plaintiff's movies.  Generally, after it receives a list of names from the ISPs, Plaintiff turns these names over to its notorious, third-party "settlement negotiators" who begin calling ISP subscribers and pressuring them to settle.  Dec'l. of M. Pietz ¶¶ 7–12.

- 9 -

Then, typically, after requesting as many extensions as it can get of the Rule 4(m) service deadline—to allow its "settlement negotiators" time to work the phones for as long as possible—Plaintiff will simply dismiss the cases, or most if not all Does, without prejudice. Dec'l. of Morgan E. Pietz, ¶¶ 24, 27. Once Malibu Media obtains subpoena returns identifying ISP subscribers, it has succeeded in getting all it really wanted in the first place: grist for the national "settlement" mill. The pending Court action is no longer a priority. Plaintiff's usual *M.O.* is to dismiss most of the Does, but keep the case on life support (usually as against any Does who objected to the subpoenas, to discourage such insolence) for as long as possible, until the case is eventually dismissed without prejudice, either at Malibu Media's request, or for failure to serve or prosecute. Every once and a while, Malibu Media does actually serve some people, to try and make a show of it, and maybe obtain a default. Dec'l. of Morgan E. Pietz, ¶ 27. However, the aggregate numbers show the pattern clearly. To confirm this pattern, this Court need look farther than its own docket; Malibu Media files cases, obtains discovery, and then dismisses most everyone (without prejudice, of course) at or near the Rule 4(m) deadline.

One key problem with this 'copyright litigation as a business model' scheme—which was not addressed in Plaintiff's moving papers seeking authorization to issue subpoenas—is that many of the subscribers whose information will be turned over by the ISPs are not actually the people who downloaded plaintiff's pornographic movies. The unfortunate people sucked into this morass are, by definition, always the people who happen to pay the Internet/cable bill. In an age when most homes have routers and wireless networks and multiple computers share a single I.P. address, the actual infringer could be a teenage son with a laptop, an invitee, a hacker, or any neighbor using an unencrypted (i.e., non-password protected) wireless signal. Thus, "there is a reasonable likelihood that the [the Does] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address." *Malibu Media, LLC v. John Does 1-11*, 2012 U.S.

Dist. LEXIS 94648 (D.D.C. April 11, 2012).  Indeed, as one judge observed in another of these cases, "*Plaintiff's counsel estimated that 30% of the names turned over to the ISP's are not those of the individuals who actually downloaded or shared copyrighted material.*"  *Digital Sins, Inc. v. Does 1-176,* -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012).

This inconvenient fact, however, generally does not stop the plaintiff from demanding that an ISP subscriber (i.e., whomever happens to pay the bill) should fork over several thousand dollars to settle the case, upon threat of being publicly accused of illegally downloading explicit pornography. That threat is essentially the heart of this business: pay up, or else plaintiff will publicly shame you as someone accused of watching pornography.  Many subscribers, even if they are innocent, simply pay the ransom rather than face the expense, uncertainty and potential embarrassment of defending themselves.  Generally, in communicating with ISP subscribers, and sometimes in pleadings to the Court, the plaintiff simply *assumes* the ISP subscribers are the John Doe defendants and then threatens them accordingly.

Some plaintiff's lawyers in cases like this have taken a step in the right direction by admitting that actually naming and serving someone with a complaint in these cases, based on nothing more than the fact that they were identified by the ISP as the person who pays the bill, would likely violate Rule 11(b).  *E.g., Discount Video Center, Inc. v. Does 1-29*, D. Mass. Case No. 12-cv-10805, ECF No. 40, 8/24/12, p. 3 (Doe Mtn. to dismiss).  Recently, Judge Wright of the Central District of California focused on precisely this point and issued an order to show cause requiring a similar plaintiff to explain why it should not be sanctioned for naming and serving an ISP subscriber as the defendant in a case like this without performing adequate factual investigation.  *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 48, 2/7/13, pp. 2–7 (OSC re: Sanctions).  Particularly when Malibu Media's notorious non-attorney, debt-collector-style "settlement negotiators"

are calling up unrepresented ISP subscribers to pressure them to settle, one imagines that the nuanced topic of Rule 11 safeguards is unlikely to be a part of the scripted routine.

Far from acknowledging the Rule 11 issue here, in order to try and obtain early discovery as painlessly as possible,[5] plaintiff simply *conflated* the ISP subscribers who pay the Internet bills for their households with the actual defendants.  The Court should carefully consider the following, from plaintiff's early discovery request in this case:

> "Plaintiff seeks leave of Court to serve a Rule 45 subpoena on the ISPs and any related intermediary ISPs.  Any such subpoena will demand the true name, address, telephone number, email address and Media Access Control ("MAC") address of the Defendant to whom the ISP issued an IP address.  Without this information, Plaintiff cannot serve the Defendants nor pursue this lawsuit to protect its valuable copyrights."  P's Memo. i/s/o Early Discovery Request, ECF No. 4-5, p. 5.

To be sure, Malibu Media fully appreciates that the subpoena will not necessarily "demand the [contact information] of the ***Defendant*** to whom the ISP issued an IP address."  What the subpoena ***will*** demand is the contact information for the ISP subscriber who pays the bill for an Internet account that was assigned an IP address at a certain date or time.  However, typically, the IP address is assigned to an entire network; lots of people could have been the "Defendant" who was assigned the IP address in question.  Plaintiff provided the ISP with the date and time that the IP

---

[5] The early discovery motion, is, by definition, almost always unopposed, because there are no John Doe defendants yet aware of the case. The only exception would be instances where the Court appoints an attorney *ad litem* to represent the interest of the John Does, which some courts do, most notably in Texas.

address in question was supposedly logged by its IT "expert" downloading a movie. However, even if plaintiff obtains a return on the subpoena, plaintiff will still have no idea *who* the actual John Doe defendant is who used this Internet access to conduct the allegedly infringing activity.  Malibu Media has a suspect, in the form of the ISP subscriber who pays the bill, but that is all.

Further, while it is true that plaintiff cannot effect service *without* the subpoena, is notable that Malibu Media does not state anywhere that it actually *plans* to follow through with service in this case.  Nor does Malibu Media argue that the subpoena would be *sufficient* to enable it to effect service.  In reality, to name and serve someone in this case in a manner consistent with Rule 11(b), more factual investigation would be required beyond the subpoena; but there is no mention of any of that in Malibu Media's early discovery motion.  In short, an IP address is not a person, but Malibu Media pretends that it is, in a calculated attempt to gloss over the holes in its case and obtain discovery by a motion it knows will be unopposed.

In sum, although subpoenas like the ones at issue here *almost never* result in service of a complaint (Dec'l. of Morgan E. Pietz, ¶ 27) they almost always *almost always* results in the consummation of "settlements," many of which are paid by people who did not actually download plaintiff's movies, but do not wish to incur the expense, uncertainty and potential embarrassment of defending themselves. Many Courts have noted serious concerns about Malibu Media's brand of litigation. As Judge Wright of the Central District of California said **in a Malibu Media case,** "The federal courts are not cogs in a plaintiff's copyright-enforcement business model. ***The Court will not idly watch what is essentially an extortion scheme, for a case that plaintiff has no intention of bringing to trial***." *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 12-cv-3623-ODW-PJW, docket no. 7, 6/27/12, p. 6. (Emphasis added).

**(b)** **Procedural History of Instant Actions**

According to a nationwide PACER search conducted on April 9, 2013, (Dec'l. of M. Pietz, <u>Exhibit A</u>) out of a total of 678 Malibu Media actions across the country (!), 48 actions have been filed in the District of New Jersey.  Between May 22, 2012, and December 19, 2012, Malibu Media filed approximately 30 multi-Doe copyright infringement lawsuits in this district, of which this case is one. [6]  However, consistent with a recent change in Malibu Media's nationwide strategy, starting in 2013, Malibu Media has switched to filing only single-Doe lawsuits; between February 15, 2013 and April 1, 2013, Malibu Media filed approximately 18 single defendants cases here.

However, these are only the *Malibu Media*, cases.  In reality, the same group of plaintiffs lawyers, which is spearheaded nationally by the Miami law firm of Lipscomb, Eisenberg & Baker ("LEB"), also directs litigation for six other pornographic serial filers, including Patrick Collins, Inc., and Third Degree Films, Inc.  If pressed, plaintiff's counsel on the pleadings here, Mr. Patrick Cerillo, will likely admit that he is following orders from LEB.  Mr. Cerillo has several counterparts in other regions around the country, all of whom represent the same group of pornographer clients (LEB's clients) in high volume litigation.  In reality,

---

[6] Why have Malibu Media's cases in this district not been related?  The fact that many different Judicial Officers have been asked by Malibu Media to consider the *exact* same issues of joinder, motions to quash, etc., involving the same plaintiff, same copyrights, same plaintiff's lawyer, same cookie-cutter pleadings, same "technical expert," same everything except IP addresses for the defendants, is likely intentional.  This is a pattern with Malibu Media that undersigned counsel has personally observed in multiple districts.  Dec'l. of M. Pietz ¶ 6. Plaintiff routinely ignores related case rules in the hopes that at least one or two Judges will bite on swarm joinder, thus perpetuating their most profitable cases.  This amounts to a form of forum shopping. Simply put, in an effort to hedge their bets and fly under the radar, Malibu Media seems content to callously waste judicial resources in this fashion.

all the Malibu Media, Patrick Collins, and certain other cases, are all essentially the same in key respects, regardless of who is filing them, or where they are filed.  LEB steers the ship and coordinates "settlement" communications, pursuant to a "joint sharing agreement" with an third party telemarketing firm, whose abuses have become somewhat notorious.   Dec'l. of M. Pietz, ¶¶ 7-12.

## III.  THE COURT SHOULD SEVER AND DISMISS WITHOUT PREJUDICE ALL JOHN DOES OTHER THAN JOHN DOE NUMBER ONE

**(a)    Legal Standard**

Federal Rule 20(a)(2) provides that defendants "may be joined" if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. Proc. 20(a)(2)(emphasis added).  On the Ninth Circuit, "The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events' *and* have a '*very definite* logical relationship.'" *Hubbard v. Hougland*, 2010 U.S. Dist. LEXIS 46184 (E.D. Cal. Apr. 5, 2010) (emphasis added); *citing Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000).  Further, "***even if the test is satisfied, district courts have the discretion to refuse joinder*** in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness."  *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-522 (5th Cir. 2010) (internal citations omitted).

**(b)    Joinder is Not Permissible**

(1)    This Court Should Adopt the Ninth Circuit Court of Appeals' Rule That Only a "Very Definite Logical Relationship" Can Support Joinder, and Sever the Does

On the Ninth Circuit there *is* Court of Appeals authority which defeats "swarm joinder," at least as alleged here.  Specifically, the Ninth Circuit Court of

Appeals has held that only a "very definite logical relationship" can support permissive joinder. *Union Paving Co. v. Downer Corp.*, 276 F.2d 468, 470 (9th Cir. 1960) (origin of "very definite logical relationship" standard on Ninth Circuit); *Bautista v. Los Angeles County*, 216 F.3d 837, 842-843 (9th Cir. 2000) (Reinhardt, J., concurring) ("claims that have 'very definite logical relationship' arise out of same transaction and occurrence"); *quoted in Hubbard v. Hougland*, No. 09-0939, 2010 U.S. Dist. LEXIS 46184, at *7 (E.D. Cal. Apr. 5,2010) ("The 'same transaction' requirement of Rule 20 refers to 'similarity in the factual background of a claim; claims that arise out of a systematic pattern of events' and have a 'very definite logical relationship.') (quoting *Bautista*).

Recently, several district courts in California have picked up on this argument and severed the Does in cases where the plaintiff made identical joinder allegations to those here at issue. *Patrick Collins, Inc. v. John Does, et al.*, C.D. Cal. Case No. 12-cv-5267-JVS-RNB, ECF No. 21, 11/5/12 (holding that on the Ninth Circuit there must be a "very definite logical relationship" to support joinder under Rule 20 so Doe defendants in BitTorrent case must be severed) (citing *Union Paving Co., supra,* and *Bautista*, *supra*); *Patrick Collins, Inc. v. John Does 1 through 9*, S.D. Cal. Case No. 12-cv-1436-H-MDD, ECF No. 23, 11/8/12 ("the majority view among district courts within the Ninth Circuit is that allegations of swarm joinder are alone insufficient for joinder". . . "Doe Defendants' alleged conduct therefore lacks the type of 'very definite logic relationship' required to permit joinder.") (*quoting Bautista, supra*); *Patrick Collins, Inc. v. John Does 1 through 34*, S.D. Cal. No. 12-cv-1474-GPC, ECF No. 18, 2/13/13 (applying "very definite logical relationship" standard and severing Does).

The requirement that a logical relationship be "very definite" in order to support permissive joinder goes straight to the heart of the key flaw in the "swarm joinder" theory.  As explained by Magistrate Judge Randon of the Eastern District of Michigan, the idea behind the "swarm joinder" theory is that because of the way

BitTorrent works, with people sharing the *exact same file* with one another, and the file necessarily originating from a single 'initial seeder,' participation in a BitTorrent download necessarily satisfied the "logical relationship" test. *See Patrick Collins, Inc. v. John Does 1-21*, 2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012).  He reasoned that  because each peer downloading a given file can somehow be linked back to that single initial seeder, it therefore follows, as a matter of pure logic, that each Doe defendant can *somehow* be linked to each other Doe defendant, via the initial seeder. *Id.*  Judge Randon stated, "in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP."[7]  *Id*. The idea is that somehow, some way, through an ***indeterminate*** number of intermediary connections to other, unidentified peers, each of whom may or may not be another Doe defendant, each doe Defendant can be linked back to the Initial Seeder, and hence to each other.

The main problem with "swarm joinder" is that the specifics of any given connection between two Doe defendants are unknown in all key respects; the number of intermediary downloaders between Doe defendant and the initial seeder, the IP addresses of the intermediary downloaders, and whether any of the intermediary downloaders are other Doe defendants in this case (as opposed to unidentified third parties) are all facts which are unknown to the plaintiff.  Or, to put that another way, the only connection between the Does the plaintiff can allege is an inherently ***indefinite*** relationship; plaintiff does not know what exactly the connection is, or how many steps it consists of.   It may be true, as a matter of pure logic, that any Doe can theoretically be linked to any other Doe downloading the

---

[7] IPP is the name of the company that currently provides the services of Malibu Media's and Patrick Collins's technical expert, Tobias Fieser.

same file using BitTorrent.  But such a loose standard clearly leaves much to be desired when it comes to the practical task of deciding whether different individuals, with different factual circumstances, may properly be joined into the same lawsuit.

Aside from general Supreme Court guidance to apply joinder rules "liberally" in furtherance of the goals of judicial economy and fairness to the parties, there really does not seem to be *any* good reason whatsoever to allow *indefinite* logical relationships to suffice for Rule 20 purposes.  Moreover, as argued in Section III(c), *infra*, it is doubtful these goals are truly being well-served by allowing "swarm joinder" in pornographic mass infringement cases.  Further, as one commentator suggested in an informative analysis, cases like this "weaken intellectual property norms by undermining the social, moral and legal legitimacy of intellectual property law. ***Courts therefore should apply the rules of joinder strictly in intellectual property cases against consumers*** and manage discovery and settlement negotiations so as to minimize, as much as possible, the negative aspects of such litigation." 20 Berkeley Tech. L.J. 1685 (2005), Opderbeck, David W., "Peer-to-Peer Networks, Technological Evolution, and Intellectual Property Reverse Private Attorney General Litigation"

Simply put, requiring that joinder only be allowed when there is a "very definite" or even just "definite" logical relationship is a sensible rule for cases like this, and this Court is urged to follow the Ninth Circuit approach, even though it is not bound to do so.

(2)   Courts of This District Now Deny "Swarm Joinder"

This Court need not look to the Ninth Circuit for precedent establishing that swarm joinder is not good law.  Courts of this district are growing increasingly skeptical of the "swarm joinder" theory employed in this kind of case.  Malibu Media, specifically, has lost on the issue here before.

Magistrate Judge Arpert of the District of New Jersey is one of a growing number of Judges who initially allowed "swarm joinder" in cases in 2011 or 2012,

but who have recently revisited the issue and changed course. *Malibu Media, LLC v. John Does # 1-39,* D. N.J. No. 3:12-cv-6945-MAS-DEA, ECF No. 23, 3/28/13 (Arpert, J.) ("the Court has been asked to revisit its findings in <u>Malibu Media</u>, denying the motions to sever and/or dismiss, based on several recent decisions issued in the District of New Jersey. . . Upon further reflection and analysis of recent authority, the Court is concerned that its ability to efficiently manage the pretrial phases of this action with the present number of defendants could be compromised by permitting joinder, causing a strain on judicial resources. Moreover, the Court now shares the concerns raised in <u>Amselfilm Productions</u>, and echoed in <u>Patrick Collins</u>, about the requisite causal connection needed to support permissive joinder under Rule 20. The Court, therefore, adopts the reasoning of those cases and, pursuant to Fed. R. Civ. P. 21, will sever and dismiss Plaintiff's claims against all defendants except John Doe # 1.") *citing Amselfilm Productions GMBH & CO. KG v. SWARM 6A6DC*, Civ. No. 12-3865-FSH-PS, dkt. no. 12 (D.N.J. Oct. 10, 2012) (Hochberg, J.) (Order granting request to sever); *Patrick Collins v. John Does 1-41*, Civ. No. 12-3908-KSH-PS, dkt. no. 32 (D.N.J. Feb. 15, 2013); (Hayden, J.) (Opinion granting motion to sever and dismiss); *Third Degree Films, Inc. v. John Does 1-110*, Civ. No. 12-5817-WJM-MF, dkt. no. 7 (D.N.J. Jan. 17, 2013) (Falk, J.) (Order denying motion for expedited discovery without prejudice).

    (3)   <u>John Does Using BitTorrent to Download Different Movies Months Apart from One Another Are Not Part of the Same Swarm and Not Part of Same Transaction or Occurrence</u>

       The alleged connection between the John Doe defendants is further attenuated by the temporal gap between the downloads alleged in the complaint.  Putting that another way, even if the "swarm joinder" theory were good law, the Does should still be severed, because as alleged in the complaints at issue here, the Doe defendants here were not really part of the "same swarm."  In all of the cases Patrick Collins and Malibu Media have filed in this District, there is a substantial temporal

gap, generally of 1–3 months, between the time of the alleged infringing downloads.[8]  A review of Exhibit "A" to any of plaintiff's complaints bears this out

At least one Court has gone so far as to hold that the "transactional relatedness" test is only satisfied in online download cases when parties are downloading a file *at the same time.  DigiProtect USA Corp. v. Doe*, 2011 U.S. Dist. LEXIS 109464, 8-9 (S.D.N.Y. Sept. 26, 2011) (***for defendants to be part of same "swarm," a user must have "downloaded the movie from the same website during overlapping times" with another member of the swarm***); *see also Raw Films, Inc. v. Does 1-32,* 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) ("Downloading a work as part of a swarm does not constitute 'acting in concert' with one another, particularly when the transactions happen over a long period of time;" time span of 4 months); *Liberty Media Holdings, LLC*, 2011 WL 5190106, at *3 (S.D. Fla. Nov. 1, 2011) (same; ***time span of two months***); *Liberty Media Holdings, LLC v. BitTorrent Swarm,* 2011 WL 5190048, at *2–4 (S.D. Fla. Nov. 1 2011) (same; ***time span of two months***).  Here, plaintiff has not alleged that Does were downloading files *at the same time* so there really is no "swarm," and therefore no basis for "swarm joinder."

In sum, plaintiff's complaint completely undermines its argument that the Does are part of the "same swarm" because the complaint shows that the Does did not download files at the same time, but rather downloaded files over one month apart from one another.  Even if "swarm joinder" were good law, this, surely, would take the concept too far afield.

**(c)     Discretionary Severance is Also In Order**

Many courts have found "swarm joinder" impermissible and then added that they believed that discretionary severance was also warranted. However, some other courts have taken a different route to the same result, finding that "swarm joinder" passes muster, but then severing the Does as a matter of the court's discretion.  *E.g.,*

---

[8] *See* ECF No. 1-2: Doe No. 9 logged 10/9/12; Doe No. 3 logged 11/10/12; for a temporal gap of over one month.

*Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No. 22, 12/6/12; *Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, D. Mass. Case No. 12-10761, ECF No. 31, 10/2/12,  2012 WL 4498911, at *6; *Next Phase Distribution, Inc. v. John Does 1-27*, ___ F.R.D. ___, 2012 WL 3117182, at *4-5 (S.D.N.Y. July 31, 2012); *SBO Pictures, Inc. v. Does 1-20*, No. 12 Civ. 3925(SAS), 2012 WL 2304253, at *2 (S.D.N.Y. June 18, 2012); *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1165, 2011 U.S. Dist. LEXIS 94319, at *38-39 (N.D. Cal. Aug. 23, 2011).

      (1)   <u>Judge Whittemore of Florida and Judge Young of Massachusetts Both Found Joinder Technically Proper But Nevertheless Severed the Does on a Discretionary Basis For Highly Compelling Reasons</u>

Judge James Whittemore of the Middle District of Florida addressed discretionary severance in highly persuasive fashion in *Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No. 22, 12/6/12.  This decision is particularly notable because the Middle District of Florida had, until that point, been a preferred forum for these kinds of lawsuits.  There had been a few decisions there buying in to plaintiff's "swarm joinder" theory, which resulted in a proliferation of these kinds of cases there.  ***Movant respectfully suggests that this Court should look carefully at Judge Whittemore's orde****r*, since all of the points he makes are equally applicable to the Malibu Media cases (and similar cases filed by Patrick Collins, Third Degree Films, and others) pending here.

Equally worthy of close review is Judge Young's October 2, 2012 order in *Third Degree Films v. Does 1-47*, ___ F. Supp. 2d ___, D. Mass. Case No. 12-10761, ECF No. 31, 10/2/12, 2012 WL 4498911. Judge Young's order is noteworthy because Judge Young had previously denied a John Doe motion for severance, finding "swarm joinder" to be appropriate at an early stage of litigation.  Judge Young explained the change of course as follows,

"Since its decision was issued in <u>Liberty Media</u>, this Court has entertained a profusion of filings in the mass copyright infringement cases on its docket. Upon further reflection and a deeper understanding of the policy concerns at play, the Court now revisits and amends its holding in <u>Liberty Media</u>. The Court continues to maintain that joinder is technically proper under Rule 20(a). The Court now holds, however, that in light of its serious concerns regarding prejudice to the defendants as a result of joinder, it ought exercise the broad discretion granted it under Rule 20(b) and sever the Doe defendants in this action and in similar actions before this Court." *Third Degree Films, supra,* at ECF No. 31, p. 10.

If this Court is convinced that joinder is technically proper, it should nevertheless sever the Does for the very compelling reasons explained by Judges Whittemore and Young.

(2)   <u>The Different Factual and Legal Circumstances Applicable to Each Doe—*e.g.*, Was the WiFi Network Encrypted and Who Had Access to It?—Will Differ Greatly, Which Weighs Heavily in Favor of Discretionary Severance</u>

An obvious point noted by almost all of the Courts that have considered discretionary severance is that each of the individual Doe defendants in these cases is likely to present completely different factual circumstances, which result in a variety of different legal defenses.  *E.g., In re: Adult Film Cases*, at p. 20 (noting the "panoply" of different legal defenses raised by a "half-dozen moving defendants, even at this preliminary stage"). Most notably, each Doe is going to have completely different circumstances and potential defenses on whether or not his or her home wireless network was unsecured, and depending on who may have had access to that network.  Thus, even though there will admittedly be at least one common question

of law or fact as between the Does (which satisfies the second prong of the joinder test), on balance, the differences between the facts and legal claims applicable to a given Doe outweigh any potential similarities insofar as joinder is concerned.  *Id.*; *see also Patrick Collins v. John Does 1-10,* C.D. Cal. Case No. 12-cv-5267, ECF No. 21, 11/5/12, * 10 ("even if the requirements for permissive joinder were met, this Court would exercise its discretion to sever the claims against John Does 2 through 10. . .*the Court notes its agreement with cases that observe individualized facts and defenses weigh in favor of the exercise of discretionary severance*. See, e.g., Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 498 (D. Ariz. 2012)") (additional citations omitted).

> (3)  If Malibu Media Wishes to Use the Court's Subpoena Power as Part of a National Copyright Infringement "Settlement" Business, it Should Factor the ***Full*** Payment of Statutorily Required Filing Fees into the Business Model

Malibu Media is fond of noting in oppositions to motions filed by the undersigned that "[i]n the year 2012, Malibu Media provided the federal judiciary with $119,700 in federal filing fees, an amount significantly more than many corporations."  At a filing fee of $350 per action, that works out to 342 Malibu Media lawsuits in 2012.  However, Malibu Media was being modest.  In reality, as of December 26, 2012, a PACER search showed that Malibu Media had actually filed 402 lawsuits in 2012.  So the more accurate filing fee total would be $140,700.  Based on a national average of 16.2 John Does per action for Malibu Media, calculated by undersigned counsel as of August 2012, that means that in these 402 actions, Malibu Media has sued approximately 6,512 John Doe Defendants.  The cost to sue each of these defendants individually would have been $2,279,200.  Subtracting actual filing fees Malibu Media paid from this later total works out to a ***net loss to the judiciary of a staggering $2,138,500, nationwide,*** all based on plaintiff's reliance on the tenuous swarm joinder theory.

As Judge Gary Brown of the Eastern District of New York commented, "If the reported estimates that hundreds of thousands of [John Doe] defendants [in mass infringement cases] have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually. ***Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen. It seems improper that they should profit without paying statutorily required fees***." *In re: Adult Film Cases, supra*, p. 23.

Judge Whittemore also picked up on this thread, noting the legal basis for the requirement that filing fees be paid, and that "Regardless of the economic impact on Malibu, severing these Doe Defendants and requiring filing fees commensurate with the impact on the docket imposes no greater harm on Malibu than that imposed on any other plaintiff in the federal courts." *Malibu Media, LLC v. John Does 1-28*, M.D. Fl. Case No. 8:12-cv-1667, ECF No. 22, 12/6/12, pp. 11-13.

Malibu Media often protests that if it were forced to pay full filing fees to sue the 600 people a month that it tries to target, it would face filing fees "simply beyond its financial capabilities as a company." Generally, however, Malibu Media offers no evidentiary support whatsoever for this argument. Certainly, the "settlement" business Malibu Media has built based on a perversion of the permissive joinder rule might become less profitable if it had to pay full filing fees. But neither the Copyright Act nor Rule 20 guarantee a copyright holder to profit (richly, one imagines) from filing what essentially amount to class actions in reverse. If Malibu Media is serious that it cannot afford to pay the filing fees, then Movants would like to see the numbers.

One obvious problem that belies Malibu Media's argument that it simply cannot afford to prosecute John Does one at a time is the fact that as of 2013, it is already doing so. As the Court can note by looking at its own docket, this year, Malibu Media has filed only single Doe actions in this district. Other, similar plaintiffs, have also stopped fighting the "stiffening judicial headwind" on swarm

joinder and have switching to only filing single Doe cases.  *See, e.g., Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333 (lead case out of 45 related, single-defendant cases filed by plaintiff's law firm Prenda Law, Inc.).

> (4)   Severing the Does Would be Without Prejudice to *Consolidation* of the Severed Cases for Certain Purposes, Which Would Alleviate Any Administrative Difficulties Posed by Severance

With respect to judicial economy, while it may seem like severing the Does and directing Malibu Media to re-file single-Doe cases could end up placing a greater administrative burden on the Court and the litigants, this does not have to be so.  The single-Doe cases could all be related to one another and assigned to the same Judge, and then *consolidated* by the Court per Fed. R. Civ. Proc. 42, for certain purposes, including *pre-complaint litigation* (e.g., adjudicating motions to quash, etc.), as well as for other limited purposes including the validity of the copyrights, issues regarding the plaintiff's technical experts, etc., as appropriate.  The consolidated cases could even be given a consolidated case title and number, as in the *In re: Adult Film Cases* decided in the Eastern District of New York*, which would allow for easier management on a single docket.  In short, the most effective way for Courts to manage the burdens posed by these cases may be to relate the cases, sever and dismiss the individual Doe defendants without prejudice, and then consolidate the cases as to certain issues (including motions to quash, and supervising pre-complaint discovery), as appropriate.

> (5)   Malibu Media's Demonstrated "Abusive Litigation Tactics," and the High Risk of Unjust "Settlements" Also Militate in Favor of Discretionary Severance

Plaintiff has a long track record of "abusive litigation tactics," which also militate in favor of discretionary severance.  Specifically, the plaintiff here typically (i) uses the same notorious, professional third-party "settlement negotiators" as other copyright trolls; (ii) uses subpoena information to collect on claims that go beyond

the scope of the complaint;[9] (iii) willfully violates courts' notice of related case rules to try and fly under the radar; (iv) seeks John Doe phone numbers and email addresses despite multiple court orders telling Plaintiff not to do so; (v) misrepresenting the range of potential damages.  Dec'l. of Morgan E. Pietz, ECF No. 36-1, ¶¶ 6–27.  Simply put, there is no shortage of cases *specifically addressing Malibu Media's* bad faith litigation conduct, *e.g.*, *In re: BitTorrent Adult Film Copyright Infringement Cases,* E.D.N.Y. Case No. 12-cv-1147-JS-GRB, ECF No. 9, 7/31/12 (*In re: Adult Film Cases II*).

> (6)  Despite Precedents Indicating a General Preference for Joinder, In this Kind of Case, the Underlying Interests of Fairness and Judicial Economy Are Better Served by Severance

Aside from wanting to make the business of suing thousands of people more profitable or cost-effective for the plaintiff, which would thus theoretically better deter copyright infringement,[10] plaintiff is hard pressed to point to any other policy concern justifying the swarm joinder rule.  Generally, as here, plaintiff points to Supreme Court precedent indicating a general preference for joinder.  Thus, Malibu Media usually acknowledges in its oppositions that the U.S. Supreme Court prefers the "the broadest possible scope of action consistent with the fairness of the parties," and that the other courts have suggested that joinder should be "liberally construed

---

[9] This tactic, which has been repeated in multiple cases in various districts, is particularly troubling, in light of the condition imposed by many courts that Malibu Media may only use subpoenas to vindicate its rights, as alleged in its complaints. S*ee* Dec'l. of Morgan E. Pietz, ECF No. 36-1, ¶¶ 14–19 and Exhibit B.

[10] The assumption that copyright owners suing a large number of infringers will actually have a deterrent effect, and result in a reduction of illegal downloads of those content owners' content, has been the subject of some empirical analysis, based on the RIAA campaign from 2002-2008.  It turns out that such an assumption, which *seems* reasonable enough, is actually somewhat dubious. https://www.eff.org/wp/riaa-v-people-five-years-later#7

in the interest of convenience and judicial economy."  This is all correct; 'fairness to the parties,' 'convenience,' and 'judicial economy' are all laudable goals.

However, for all of the reasons explained above, and in the orders of Judges Whittemore and Young, in cases like this one, these goals are all better served by severing the Does.  As one commentator suggested in an informative analysis, cases like this "weaken intellectual property norms by undermining the social, moral and legal legitimacy of intellectual property law. ***Courts therefore should apply the rules of joinder strictly in intellectual property cases against consumers*** and manage discovery and settlement negotiations so as to minimize, as much as possible, the negative aspects of such litigation." 20 Berkeley Tech. L.J. 1685 (2005), Opderbeck, David W., "Peer-to-Peer Networks, Technological Evolution, and Intellectual Property Reverse Private Attorney General Litigation."

Judge William Duffey, Jr. of the Northern District of Georgia made another good point on the policy interests at play: swarm joinder inflates the value of both the copyrighted work at issue, as well as the lawsuit itself, which incentivizes litigation, rather than promotion of the "useful arts."

> "The market value of a work like the one in this case is modest. The danger of swarm joinder is to enhance the proceeds from a Work by extracting settlement amounts that exceed the value of the Work and the litigation. It is conceivable that the swarm joinder device could encourage the creation of works not for their sales or artistic value, but to generate litigation and settlements. *See On the Cheap*, 2011 WL 4018258, at *3 n.6. The risk of inappropriate settlement leverage is enhanced in a case like this involving salacious an graphic sexual content where a defendant may be urged to resolve a matter at an inflated value to avoid disclosure of the content the defendant was

accessing." *K-Beech, Inc. v. John Does 1-47*, N.D. Ga. No. 11-cv-2968.

In other words, ***through the miracle of copyright statutory damages combined with swarm joinder, a work of authorship never likely to be worth very much at all on the open market suddenly becomes worth millions of dollars*** (in potential infringement "settlements") in cases like this.  This seems to have gotten very far afield from what the Framers of the Constitution and the Congress drafting the Copyright Act had in mind when creating a copyright system supposedly designed to "promote the Progress of Science and useful Arts."  U.S. Const. Art. I, Section 8, Clause 8.

* * *

In sum, all John Does other than Doe No. 1 should be severed and dismissed without prejudice, both because the *indefinite* theory of joinder alleged here is impermissible, and as a matter of the Court's discretion, in the interest of fairness.

## IV.  THE COURT SHOULD QUASH ALL THE SUBPOENAS, EVEN FOR JOHN DOE NUMBER ONE

Obviously, it follows that when Courts sever and dismiss John Does without prejudice further to granting a motion to sever, those Courts also quash outstanding subpoenas for the severed John Doe defendants. *In re: BitTorrent Adult Film Copyright Infringement Cases,* 2012 U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012) Case No. CV-11-3995-DRH-GRB, Dkt. No. 39, pp. 23-25; *Digital Sins, Inc. v. John Does 1-245*, S.D.N.Y. Case No. 11-cv-8170, Dkt. No. 18, 5/15/12, p. 7 ("Because I have severed and dismissed all of the claims against the defendants, I hereby, *sua sponte*, quash any subpoena that may be outstanding to any Internet service provider seeking information about the identity of any John Doe other than John Doe 1.  Plaintiff is directed to send a copy of this order within 24 hours of its

issuance to any and every internet service provider who has been served with a subpoena for any information concerning any other John Doe defendant."). To do otherwise would only encourage plaintiffs to try and avoid paying statutorily required filing fees by mis-joining as many Does as possible, and then forcing the Does to file, and the Court to hear, motions for severance.

What about John Doe number one? Or, if this was a case against a single defendant, or if the court declines to sever the Does, would there still be a persuasive argument to quash the subpoena? The short answer is yes, all the subpoenas should still be quashed.

**(a)    Legal Standard**

　　(1)    The *Sony Music* and *Semitool* Factors

When it comes to evaluating the propriety of ISP subpoenas that seek to unmask the identities of John Doe defendants in file sharing cases, courts on the Second Circuit typically use the *Sony Music* test, which requires courts to weigh:

> "(1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, ... (2) [the] specificity of the discovery request, ... (3) the absence of alternative means to obtain the subpoenaed information, ... (4) [the] need for the subpoenaed information to advance the claim, ... and (5) the [objecting] party's expectation of privacy." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (*citing Sony Music Entm't Inc. v. Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)).

Courts often refer to these four factors as the *Sony Music* factors. As the *In re: Adult Films Cases* court noted, this test is not only relevant in evaluating motions to quash, but also frames the inquiry as to whether early discovery should have been granted in the first place. *In re: BitTorrent Adult Film Copyright Infringement Cases,* 2012

U.S. Dist. LEXIS 61447 (E.D.N.Y. May 1, 2012) Case No. CV-11-3995-DRH-GRB, ECF No. 39 at p. 11.

Courts on the Ninth Circuit typically apply a similar set of factors, the so-called *Semitool* or *seescandy* factors. As one Court explained in a case filed by the same group of lawyers behind this case, when evaluating a subpoena in a case like this,

> "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). In determining whether there is good cause to allow expedited discovery to identify anonymous internet users named as Doe Defendants, courts consider whether: (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible. *See, e.g., Hard Drive Productions, Inc. v. Does 1-90*, C11-03825 HRL, 2012 WL 1094653 (N.D. Cal. Mar. 30, 2012); *see also Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999) (applying same standard)." *Patrick*

- 30 -

*Collins, Inc. v. John Does, et al.*, C.D. Cal. No. 12-cv-05267, ECF No. 21, 11/5/12, p. 5 (slip op.).

The *Sony Music* and *Semitool* factors largely track with one another, although, if anything, the *Semitool* factors are perhaps a little more specific. For example, *Semitool* requires that a plaintiffs complaint be able to withstand a motion to dismiss, whereas *Sony Music* talks about the "concreteness" of plaintiff's *prima facie* claim. Similarly, whereas *Semitool* requires that the plaintiff demonstrate "that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible," *Sony Music* talks instead of a showing that the discovery will "advance the claim."

(2) <u>*Gillespie* asks Whether the Subpoenas are "Very Likely" to Result in Service of Process</u>

With respect to the question of whether the subpoenas will result in service of process, or "advance the claim," many courts actually go even farther than *Semitool* or *Sony Music*, and follow a Ninth Circuit case which asks whether the subpoenas are "very likely" to result in the service of process. *Gillespie v. Civiletti,* 629 F.2d 637, 642–43 (9th Cir. 1980). Many courts have cited *Gillespie* for the proposition that subpoenas in cases like this should be quashed because they are not "very likely" to reveal the identities of the actual defendants. *Hard Drive Productions, Inc. v. Does 1-188*, 809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011) ("*Hard Drive Prods.*") (denying early discovery because "It is abundantly clear that plaintiff's requested discovery is not '***very likely***' to reveal the identities of the Doe defendants."); *see also, e.g., AF Holdings LLC v. Does 1-96*, N.D. Cal. No. 11-cv-3335-JSC, Dkt. No. 14, 9/27/11, p. 6 (denying requested early discovery because it was not "***very likely*** to enable Plaintiff to identify the doe defendants."); *AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 (denying early discovery because "the requested discovery was '***not very likely***' to reveal the identity of the alleged infringer"); *Malibu Media v. John Does 1-10*, C.D.

Cal. Case No. 2:12-cv-3614-RGK-SS, ECF No. 35, 10/10/12 ("*Malibu Media II*")
(denying early discovery, even as to John Doe No. 1, where it was not "very likely"
to result in identification of defendant).

     (3)    <u>The Inquiry Is Not Limited to the Terms of Rule 45</u>

     The issue before the Court on whether to quash the subpoenas is not one
purely limited to the terms of Rule 45.  This is true for two reasons.

     First, the defendants were unaware of this action when early discovery was
granted, and were therefore unable to challenge the issuance of early discovery prior
to a Rule 26(f) conference.  Generally, there is a higher bar for early discovery than
is the case for subpoenas issued in the normal course of two-party litigation.  *See
Patrick Collins, Inc. v. John Does, et al.*, C.D. Cal. No. 12-cv-05267, ECF No. 21,
11/5/12, p. 5 (slip op.).

     Second, and perhaps more importantly, although it is not necessarily
immediately obvious, the subpoenas at issue here implicate limited First
Amendment rights in anonymous speech, so heightened scrutiny should be applied.
*Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004)
(surveying case law and concluding "that the use of P2P file copying networks to
download, distribute, or make sound recordings available qualifies as speech entitled
to First Amendment protection."); *Call of the Wild Movie, LLC v. Does 1-1,062*,
D.D.C. Case No. CV-10-455, Dkt. No. 40, 3/22/2011, p. 21 (Howell, J.) ("file-
sharers are engaged in expressive activity, on some level, when they share files on
BitTorrent, and their First Amendment rights must be considered before the Court
allows the plaintiffs to override the putative defendants anonymity by compelling
production of the defendants' identifying information.")

     Movant concedes that many courts rightly conclude that file sharing is not
really pure speech, and thus afforded only very limited First Amendment protection,
and that such a limited right must often give way to a copyright infringement
plaintiff's need for civil discovery.  However, the upshot of the First Amendment

issue is that is that this Court must apply the heightened First Amendment scrutiny in analyzing the subpoenas, which includes considering whether the complaint could withstand a hypothetical motion to dismiss. *See Sony Music Entm't Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

In short, the inquiry before the Court is not a straight Rule 45 issue; rather, the Court is required to look a little more carefully at plaintiffs subpoena, and the complaint, in a case like this.

**(b)      The Subpoenas, *By Themselves*, Are Not "Very Likely" or even "Reasonably Likely" to Result in the Identification of and Service Upon an Actual Defendant; Where is the Rest of the Discovery Plan?**

In essence, the problem in a case like this is that although the subpoena is a *necessary* first step in identifying an actual infringer, the subpoena alone is not a *sufficient* means to achieve that end.  And plaintiff presents no discovery plan as to how it will take a subpoena return listing ***ISP subscribers*** who pay the Internet bill for their households, and then use that information to identify actual ***John Doe defendants*** who will then be served.  What plaintiff's past experience strongly suggests is that it does not really care to identify actual defendants; rather, plaintiff simply wants to leverage "settlements" from as many ISP subscribers as possible, upon threat of publicly "naming" them in a lawsuit alleging that they downloaded pornography, regardless of whether they committed the alleged infringement or not. Plaintiff *may* be able to propose a reasonable, good faith discovery plan that would make the subpoenas *more likely* to result in identification of actual defendants, but it has not done so here.

Recently, Judge Wright of the Central District of California picked up on precisely this issue in a similar case filed by a different pornographic mass infringement plaintiff.  After all the AF Holdings, LLC cases in the Central District of California were transferred to Judge Wright, Judge Wright issued an order in each case vacating the prior orders authorizing early discovery and ordering the plaintiff

to show cause why early discovery is warranted.  *See, e.g., AF Holdings, LLC v. John Doe*, C.D. Cal. Case No. 2:12-cv-5712-ODW-(JCx) ECF No. 9, 10/19/12. Specifically, Judge Wright ordered AF Holdings to demonstrate,

> "how it would proceed to uncover the identity of the actual infringer once it has obtained subscriber information— given that the actual infringer may be a person entirely unrelated to the subscriber—while also considering how to minimize harassment and embarrassment of innocent citizens. Failure to timely comply with this order will also result in the dismissal of this case." *Id.; see also Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 28, 12/20/12 (same).

Similarly, many courts have quashed subpoenas because they have found that the subpoenas, by themselves, were not "very likely" or even "reasonably likely" to result in identification of defendants and service of process. *Hard Drive Productions, Inc. v. Does 1-188*,  809 F. Supp. 2d 1150 (N.D. Cal. August 23, 2011) ("*Hard Drive Prods.*") (denying early discovery because "It is abundantly clear that plaintiff's requested discovery is not '***very likely***' to reveal the identities of the Doe defendants."); *see also, e.g., AF Holdings LLC v. Does 1-96*, N.D. Cal. No. 11-cv-3335-JSC, Dkt. No. 14, 9/27/11, p. 6 (denying requested early discovery because it was not "***very likely*** to enable Plaintiff to identify the doe defendants."); *AF Holdings, LLC v. John Doe*, D. Min. Case No. 12-cv-1445, Dkt. No. 7, 7/5/12 (denying early discovery because "the requested discovery was '***not very likely***' to reveal the identity of the alleged infringer"); *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 2:12-cv-3614-RGK-SS, ECF No. 35, 10/10/12 ("*Malibu Media II*") (denying early discovery, even as to John Doe No. 1, where it was not "very likely" to result in identification of defendant).

Judge Klausner's order out of the Central District of California is particularly

significant in that it denies early discovery *even as to John Doe No. 1*, because Malibu Media could not demonstrate good cause for early discovery, despite having two bites at the apple.[11]  *Malibu Media v. John Does 1-10*, C.D. Cal. Case No. 2:12-cv-3614-RGK-SS, ECF No. 35, 10/10/12 ("*Malibu Media II*").  Judge Klausner held that *Gillespie v. Civiletti*, 629 F. 2d 637, 642 (9th Cir. 1980) controls, and that the requested discovery should be denied because it was not "very likely" to reveal the identities of the Doe defendants.  *Malibu Media II, supra,* p. 4.  The problem, rightly noted by Judge Klausner, is that "obtaining the subscriber information [by issuing subpoenas to the ISPs] will only lead to the person paying for the Internet service and not necessarily the actual infringer." *Id.* After reviewing all of the reasons why "the subscriber information is not a reliable indicator of the actual infringer's identity," including the possibility the subscriber has an unsecured WiFi network, as well as the prejudicial effect on innocent subscribers, Judge Klausner further held that "it is ***not even reasonably likely*** that early discovery will lead to Defendants identities and service of process." *Id.* (emphasis added).  In short, Malibu Media's practice, repeated here, of selectively *assuming* that an ISP subscriber who pays the Internet bill is necessarily the actual Doe defendant has thus explicitly been held insufficient.

Further, the Court should review its own docket and observe firsthand Malibu Media's record of service of process.  When authorized to issue subpoenas, only a paltry number of cases ever proceed through to service of process.  Malibu Media has attempted to subpoena information for over 6,000 John Doe defendants, of whom it has served, what, perhaps 100?  Do these numbers really add up to even a "reasonable likelihood" that the subpoenas will result in service of process?

---

[11] After all of the Malibu Media cases were transferred to Judge Klausner on July 10, 2012, the Court issued an order vacating all prior orders authorizing early discovery. *Malibu Media v. John Does 1-10,* No. 2:12-cv-1642-RGK (C.D. Cal.  July 10, 2012). Malibu Media subsequently filed a renewed motion for leave to take early discovery, which was denied as to *all Does, with* prejudice.  *Malibu Media II, supra*.

In short, before being given the keys to discovery, a plaintiff in this kind of case should be required to explain what it will do with the subpoena information, if allowed to obtain it. *Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 28, 12-20-12; *Malibu Media II, supra*. Perhaps Malibu Media can devise a discovery plan making it more likely that the subpoena will result in service of process on an actual defendant, but it should, at the very least, be sent back to the drawing board to propose such a plan.

**(c)      The Complaint Cannot Withstand a Hypothetical Motion to Dismiss**

First, it should be noted, as explained in Section III, above, the complaint cannot withstand the *actual* motion to dismiss this case without prejudice for improper joinder (i.e., a motion to sever) that is presently before this Court.

However, moving beyond severance, Movant would also argue that the complaint cannot withstand a motion to dismiss for failure to state a claim on which relief can be based, because the complaint employs the so-called "snapshot" theory of infringement. *See Ingenuity 13, LLC v. John Doe*, C.D. Cal. No. 12-cv-8333-ODW, ECF No. 48, 2/7/13, pp. 4–5 (OSC re: Sanctions).

Essentially, at most, plaintiff's complaint alleges that the John Doe defendants were observed downloading tiny "pieces" of a BitTorrent file. The complaint does ***not*** contain an allegation that the defendants actually assembled a complete set of "pieces" together into a usable version of the work which was then copied or distributed. As Judge Wright has explained, a mere snapshot observation of possible infringing activity does not necessarily equal actionable copyright infringement. In fact, Judge Wright believes that filing and serving a complaint based on such weak evidence may be sanctionable, under Rule 11(b). *Id.* If the Court is interested in this issue, Movant would be pleased to brief it further.

//

## V.  CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court sever and dismiss the claims against all John Doe defendants other than Doe number one, and that the Court quash all outstanding subpoenas.


Respectfully submitted,

DATED:   April 10, 2013, New York, New York,


**THE PIETZ LAW FIRM**                      **MAVRONICOLAS MUELLER & DEE LLP**


*/s/ Morgan E. Pietz*                        */s/ Peter C. Dee*

  *Pro Hac Vice Application Pending*            *Local Counsel*

Morgan E. Pietz (Cal. Bar No. 260629)    Peter C. Dee
3770 Highland Avenue, Suite 206          950 Third Avenue, 10th Floor
Manhattan Beach, CA 90266                New York, New York 10022
mpietz@pietzlawfirm.com                  (T) 646.770.0024
Telephone: (310) 424-5557                (F) 866.774.9005
Facsimile:  (310) 546-5301               pdee@mavrolaw.com

*Attorneys for Putative John Doe in 2:12-cv-07789*